177 So. 569

**REICHERT v. LLOVERAS.**

No. 34496.

Nov. 29, 1937.

Legier, McEnerny & Waguespack, of New Orleans, for appellant.

Daly & Hamlin, of New Orleans, and William F. Roy, Jr., of Arabi, for appellee.

ODOM, Justice.

Plaintiff sued her husband for separation from bed and board and asked incidentally for alimony of $125 a month during the

pendency of the suit. The court ordered the husband to pay $60 per month. The husband appealed.

The only two questions presented are: (1) Whether the husband should under the circumstances here presented, contribute anything toward his wife's support while her suit is pending; and (2) if he should, whether the amount fixed by the judgment is excessive.

The grounds on which the husband bases his contention that he should, not be required to contribute anything toward his wife's support while this suit is pending are: (1) That, in the month of May, 1927, his wife, the plaintiff here, obtained a judgment of separation from bed and board against him in another suit, which judgment contained the following clause: "It is further ordered, adjudged and decreed that defendant be relieved of the payment of past, present and future alimony, plaintiff waiving her rights thereto." And (2) that, on the day after the judgment in that case was signed, plaintiff and defendant entered into a notarial act of settlement of their community affairs, in which act it was provided: "It is further agreed and understood between them, the parties hereto that, in consideration of the lump sum settlement made by Benito Lloveras upon Mrs. Mildred May Reichert, wife, duly separated from bed and board, of Benito Lloveras, by this act she does hereby formally waive and renounce any and all rights or claims which she may have for alimony at the present time as well as in the future."

Counsel for the defendant cite in support of their argument article 1901 of the Civil Code, which says that: "Agreements legally entered into have·the effect of laws on those who have formed them. They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith."

They cite, also, the case of Mann v. Mann, 24 La.Ann. 437, where the court, after judgment of divorce was rendered, recognized, as the law between the parties, a contract for the settlement of their community affairs entered into by them prior to the date on which the divorce was granted but while the suit was pending.

But the article of the Code and the case cited have no application to the ·case presently before us.

The only question here presented is whether the husband must provide for his wife's support while her present suit is pending. The judgment rendered and the contract entered into between this plaintiff and defendant in 1927 relating to alimony could and did have reference only to such alimony as might be due under or as a consequence of the former suit for separation.

The facts are that Mrs. Lloveras obtained a judgment of separation against her husband in May, 1927, and that a few days after the judgment was signed and the contract entered into, she and her husband became reconciled and lived together for nearly ten years before the present suit was filed.

The judgment rendered in 1927 did not dissolve the bonds of matrimony

between plaintiff and defendant. That judgment was not followed up by one of divorce. The parties remained husband and wife. The reconciliation and living together of the parties destroyed the effect of the 1927 judgment except in so far as it dissolved the community of acquests and gains which existed between them, which community could not be re-established by agreement of the parties. Crochet v. Dugas, 126 La. 285, 52 So. 495; Succession of Le Besque, 137 La. 567, 68 So. 956.

The plaintiff was at liberty to bring a new suit for separation for causes arising subsequent to the reconciliation. C.C. art. 153. That is what plaintiff has done, and, as an incident to the new suit, she has asked that her husband be ordered to provide for her maintenance and support while her present suit for separation is pending.

■ Article 148 of the Civil Code, as amended by Act No. 130 of 1928, requires the husband, if the wife has not a sufficient income for her maintenance during her suit for separation, to contribute a sum for her support proportionate to her needs and his means. While a suit for separation from bed and board is pending, the wife, whether she be plaintiff or defendant, must be supported by the husband, because she is still his wife. The amount which the husband must contribute is usually, as here, subject to serious controversy between the parties. In order to arrive as nearly as possible at the correct amount, courts must first ascertain not what the wife wants, but what she needs for her maintenance and support during the pendency of the suit. If the amount she needs is proportionate to the husband's means of payment, that amount should be awarded. If, however, the wife's needs exceed the husband's ability to pay, the courts must fix a monthly sum which will as nearly as possible be just and fair to each.

In the present case, as in many others which come before the courts, it is difficult indeed to say just what amount the husband should be ordered to contribute. The trial judge found that the wife needed $60 per month, and ordered the husband to pay it. It may be that the judge was correct in his finding that the wife needed $60 per month. But, according to the testimony, the husband is not able to pay that amount.

The testimony is rather meager both as to the needs of the wife and as to the husband's ability to pay. The testimony taken in the lower court was not brought up as taken. But there is a narrative statement made by counsel which is said to be the gist or substance of what was proved. As to the wife's needs, there is no testimony except her own. She said she was living with her father and mother, who are presumably keeping house, and that she needed $75 per month for board, lodging, clothing, and incidentals. It seems that this couple were living with the plaintiff's father and mother prior to their separation, and that the husband was paying $75 per month for board and lodging for both, and that the husband was giving the wife about $15 per month for clothing and incidentals. He testified that he was then spending about $20 a month for his own incidentals. Assuming that these amounts covered the needs of both the husband and

the wife and that the wife's needs were one-half that amount, it would seem that her needs were now approximately $55 or $60 a month, as found by the trial judge.

However, according to the testimony of the husband, which is not disputed, he fell behind in the payment of the board bill $294 prior to the separation, and that, since the separation, he borrowed money on his real estate to make the payment. There is in the record a document, filed as No. 3, showing the gross income of the husband from January 1 to May 15, 1937. The statement shows also his expenses during that time. According to this statement, his net income per month was only $43.80.

The husband owns certain real estate which rents for $35 per month, or $420 per year. The taxes and insurance on the property in 1936 amounted to $102.48, leaving a net income from that source of $317.51 for the year 1936. He testified that he spent for repairs on the property during that year $485.76. He testified further that the property was worth approximately $5,000 and was mortgaged for $2,000, and that he was paying 5 per cent. interest on the loan. He testified that he owned an automobile worth possibly $900, which he used in his business, and that his repair bills amounted to considerable. He also has life insurance with some cash surrender value which has been consumed by loans made to him by the companies. He also owns 100 shares of stock in the Jefferson Lake Oil Company, worth $500, but nothing is said about whether this stock pays dividends or not.

The defendant is in the merchandise brokerage business, and testified that he had a contract with the Shawnee Milling C_)any, from which he draws $150 per month, and a contract with the Pelican Cracker Company, from which he draws $50 per month; that these were guaranteed commissions; and that his expenses in connection with these contracts amounted to $193.76 per month. He testified that the above amounts were guaranteed commissions, were the minimum amounts which he could draw, and that the average amount drawn as commissions was $211.10 per month.

In the statement filed as "defendant 3," he lists his expenses, which include $25 per month office rent, $50.50 for stenographer and office boy, $50 per month for export man, $30 for gasoline and automobile expenses, exclusive of repairs, $8.25 for telephone, $6.11 per month insurance on automobile, and other incidental expenses, amounting in the aggregate to $193.76.

He testified further that he had to make regular payments for interest and life insurance premiums, and that, after taking care of all his necessary expenses in connection with his business and in connection with the real estate which he owns, his net monthly income was only $43.80.

Counsel for Mrs. Lloveras say in brief that the trial judge did not believe the husband. The judge did not favor us with a written opinion giving the reason why he fixed the amount to be contributed at $60 per month. He presumably thought that she was entitled to at least one-half

the amount which it had cost both the husband and wife to live prior to the separation, and that the husband should contribute one-half as much to her support as it had cost both to live prior to the separation. This would be a sound basis for fixing the amount if the testimony showed that the husband was able to pay that amount prior to the separation and is still able to pay it. But, according to the testimony, the husband was not able to pay the board bill and had to borrow on his property in order to satisfy that debt. If the husband falsified his accounts, it is reasonable to assume that counsel for the wife could have shown that fact, or at least could have introduced testimony to discredit the statement sworn to and filed by the husband. He itemized his expenses as well as his income. As none of the statements he made is contradicted, we must accept them as true.

Our conclusion is that, while the wife may need as much as $60 per month in order to live in the same style that she did prior to the separation, yet to require the husband to pay that amount under the circumstances disclosed by the record would be unjust to him. He has not the income, and, if he pays it, he would necessarily have to sacrifice the real estate which he owns and which is already mortgaged for approximately one-half its value, or sell the stock he owns in the oil company. Counsel for the wife says that an alimony of $60 per month to the wife where the husband has an income of $250 per month and assets amounting to nearly $6,000 would not be excessive. It would be true if the husband had a net income of

that amount and had unincumbered assets to the amount stated. But, in the present case, the amount stated is the gross and not the net income; and, while the property has a value of approximately $6,000, it is incumbered to the extent of $2,000.

Under the circumstances, we think the maximum amount which the husband should be ordered to pay is $40 per month.

For the reasons assigned, the judgment appealed from is amended so as to reduce the amount of alimony ordered to be paid by the husband from $60 to $40 per month, and, as thus amended, the judgment is affirmed.

HIGGINS, J., absent.