ELLIS, Judge.
The St. Tammany Parish School Board on May 25, 1962, filed this suit against Pole-ate Baham for the purpose of expropriating a parcel of land for school purposes, measuring 110 feet by 396 feet, however, an actual survey shows the latter distance to be 378 feet, and on May 28, 1962, in connection with the suit deposited in the registry of the Clerk of Court in and for the Parish of St. Tammany, State of Louisiana, the sum of $4,482.00 which it alleged was the value of the land and improvements thereon. After trial upon the merits on March 9, 1964, the trial judge awarded the defendant $6,241.00 for the land and improvements and in connection therewith dictated into the record the following concise reasons:
“I’ve taken into consideration principally the experts, Randle, Breeding, Graves, and Robert Baldwin. The Court’s impressed that the School Board’s appraisers have a tendency to press the price down and that the property owner’s appraisers have too much water in their appraisements. I’m considering the comparables submitted, the location, the income and the use that it was put to or could be put to at that time without any speculation and particularly the property shown as parcel number 3 in the James Inerarity Addition on one map. On the other map, it just shows a lot with 110 feet frontage by 378.8 feet depth, and I’m using that square 42, the Fritchie property, that’s bound on the north, I believe, by Congo Street and bound on the west by Third Street and on the east by what’s been determined to be Fourth Street, an undedicated street called Fourth Street. With all that street frontage, it certainly has a value. I’m using the Fritchie property. It certainly has a value, a greater value than the 110 foot on the unimproved Fourth Street. Allowing for the pecan trees, the house, the improvements and all the other values, I think the School Board ought to pay the man about $6,241 for the whole thing. I’ll sign a judgment to that effect and sign an order of appeal next Friday.”
The St. Tammany Parish School Board appealed from the above judgment; however, the defendant neither appealed nor answered the appeal of the plaintiff-appellant.
Prior to the institution of this suit the School Board had purchased a number of smaller pieces in the area of the subject property with the exception of one which was 247 feet by 433 feet. The latter piece of property was purchased by private sale for $15,000.00. The subject property is just across the street, Fourth Street, from this large piece of property and fronts 110 feet along Fourth Street. It has a house on it that rented for $30.00 per month and was valued from $500.00 to $3000.00 by the four appraisers, two on behalf of the School Board and two on behalf of the defendant. The property also has nine large pecan trees which from the pictures appear to be large, beautiful trees, and also two fig trees and it is admitted that it has city facilities offered by the fast-growing *276 •city of Slidell, Louisiana, such as water, •electricity, natural gas, etc.
It is admitted that the School Board had .acquired all the other property for school purposes, the large piece being used for a playground, and there is no doubt that the Board was seeking area. All the property is located in what is referred to as the Innerarity land area or Lincoln Park and is to be used for a Negro school. This area is owned mainly by Negroes.
Edwin H. Randle, an expert appraiser for the School Board, testified that the property being expropriated was worth $18.00 a front foot but -due to its depth he used a so-called depth table and multiplied 18 by 181% and obtained a figure he quoted as being $3583.00 for the land and valued the improvements at $600.00, for a total of $4183.00 which was rounded out to $4200.-00. Pie based this valuation on approximately ten comparables in the Innerarity or Lincoln Park area which were sold at various times in 1960 and 1961 and showed a front foot value of $9.00 to as much as $26.66. He did not use or stress the sale from Fritchie to the School Board on July 20, 1961 for a tract 247 feet by 433 feet for $15,000.00 directly across from the subject property. His appraisal was made on October 4, 1961.
Henry Breeding, Jr., another expert who testified on behalf of the School Board, used comparables in the same area that were sold from 1960 to July 15, 1961 which ran from $10.00 a front foot to $26.00 a front foot with the exception of the piece sold by Fritchie to the School Board on July 20, 1961 for $15,000.00 and which as previously stated measured 247 feet by 433 feet. This property fronted on Third Street and Congo Street. If we use the 247 feet frontage on Congo Street, we have a front foot value of $60.72 and if we use 433 feet frontage on Third Street, we have a value of $34,67. The witness as well as counsel for the School Board appeared to use the 433 feet on the Fritchie property but used the 110 feet to arrive at a front foot value on the subject property. The two are comparable, being right across the street from each other and both having a good area which was desired by the School Board and, therefore, we believe they should have used the 378 feet or if they wish to use the 247 feet frontage as the test of front foot value, they should use the 110 feet of the subject property.
Breeding, based upon the comparables he used, gave the subject property a front foot value of $36.20 and used a so-called average depth method multiplied by 181% and came up with a value of $3982.00 for the land and valued the improvements at $500.00 with no value for the pecan trees, for a total of $4482.00, which is the amount deposited in the registry of the Court by the School Board as the value of the property and improvements. Breeding’s appraisal was made also on October 4, 1961, however, he went back on the property in December, 1963.
Emory Graves testified as an expert on behalf of the defendant and made an appraisal on June 2, 1962, however, it appears that there was no substantial change in . the value of the property from May 25, 1962 to the date of his appraisal. While it is generally conceded by all the appraisers that ordinarily only commercial property is appraised on a square foot basis, this witness, along with Mr. Baldwin who also testified on behalf of the defendant, was definitely of the opinion that a square foot evaluation in the instant case would be fairer based upon comparables that had been sold in the area and particularly the Fritchie tract. Graves valued the land at $6700.00 and the replacement cost of the building 900 square feet at $3000.00 for a total of approximately $9700.00. The evidence revealed that the Fritchie tract brought approximately $6,241.00 an acre and the tract of the defendant comprised approximately one acre and it is really on this basis that the Judge awarded $6,241.00 which he stated during the trial was the exact amount per acre paid for the Fritchie *277 property. Graves found the square foot value of the Fritchie property to be 14‡ per square foot and, reasoning that the subject property was somewhat smaller in area and more desirable, estimated that it was worth 15^ per square foot. Counsel for the School Board objected to any valuation based on square footage as the property was zoned residential. However, Graves testified that the zoning ordinances in Slidell with its rapid growth were ■“being abbreviated and switched every •day.” Also, that the School Board had set its own value on the property on July 20, 1961, when it purchased the Fritchie property for $15,000.00. There is no question but that either way you figure it, 247 feet front or 433 feet front, established a square foot value of 14‡. Graves also used property purchased by the School Board on March 28, 1962 from Thompson which was 91 feet by 100 feet for $2002.00, or $22.00 per front foot. Also, a piece from Doucet 50 feet by 100 feet for $910.00, or $18.00 a front foot, and another piece from Willard Doucet 100 feet by 150 feet for $2730.00, •or $27.30 a front foot, which on a square foot basis gave the Doucets approximately 18‡ a square foot. Graves also brought ■out that on the date of the trial there was already built on the adjoining property which he described as “There’s a school right next to it. There’s a school within one-half an inch of it.” He testified that the Thompson property brought 22‡ a square foot, the Fritchie property 14^, the Doucet properties 18^ a square foot and that he tried to take a mean average in his •evaluation of 15^ a square foot for the entire property in contest. He stated that he considered the rear to be less valuable than the front and had arrived at this as an average figure. His total evaluation was $9700.00, based upon $6700.00 for the land and $3000.00 for the house and trees.
Robert Baldwin, who testified as an expert on behalf of the defendant, thought the square foot method of evaluating the property was proper in the instant case and reasoned that the Fritchie property had sold for 14f a square foot and the value had been fixed by the School Board when they paid $15,000.00 for the tract that measured 247 feet by 433 feet. He thought the defendant’s tract was worth 2‡ more a square foot. The building he estimated at $3000.00, or $9500.00 for the land and improvements. His evaluation was mainly based upon the Fritchie playground tract and the two Doucet places discussed in Graves’ testimony above.
Mr. Gus Baldwin was of the opinion that the land was worth $10,000.00 and the improvements $2,000.00.
Based upon the testimony in this record, the property expropriated is well worth the amount awarded by the lower court of $6,241.00. It cannot be increased as there is no appeal and no answer to the appeal. But even if we use a front foot value and concede that the Fritchie property fronting on two streets was worth more per front foot by one-fourth than the subject property which would be giving three-fourths of the front foot value based upon 247 feet on the Fritchie property of $60.72 or approximately $45.00 a front foot for the subject property using 110 feet as frontage distance would give a valuation to the land of $4950.00 and the valuation on the house of $1500.00 which we fix as its fair value in view of the fact that it rented for at least $30.00 a month as well as its condition which would give a total value of $6450.00.
Should we use the $34.67 which was the foot value of the Fritchie property when we take 433 feet as the front of the property and apply it to the 378 feet of the subject property and reduce that by one-fourth, it would still give approximately $9,828.95 for the subject property without any evaluation for the improvements.
If we use the square foot approach, there is no question but that the subject property would be valued at more than $6,241.00. So, in either event, the judgment of the *278 lower court is not erroneous as far as the School Board is concerned.
For the above and foregoing reasons, the judgment of the lower court is hereby affirmed.
Affirmed.